IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEVELOPERS SURETY AND INDEMNITY COMPANY,** <br> *Plaintiff*, <br><br> v. <br><br> **MEGA CONSTRUCTION CORPORATION OF NEW JERSEY, INC.,** et al., <br> *Defendants*. | **CIVIL ACTION NO. 2:15-cv-4729-MMB** |

MEMORANDUM OF DECISION

**BAYLSON, J.**                                                                                             **March 17, 2023**

## I.     INTRODUCTION

This is a simple breach of contract case. Plaintiff and Defendants entered into an indemnity agreement. Plaintiff claims that Defendants are obligated by the Agreement to reimburse Plaintiff for approximately $100,000 in legal expenses, which Defendants have not done. Defendants argue that they are not in breach of the indemnity agreement, and that even if they were they do not owe Plaintiff anything. Both sides have filed motions for summary judgment.

Because genuine disputes of material fact still exist, the Court will dismiss both motions.

## II.    FACTUAL BACKGROUND

The following are undisputed facts established in the record by the parties.[1] Plaintiff Developers Surety and Indemnity Company ("Developers") is a surety business authorized to

---

[1] Neither party filed statements of undisputed fact to accompany their motions. The Court is left to analyze the established facts of the case from the record and from the parties' reference to the record in their various filings of legal memoranda.

1

issue performance bonds for labor and material in Pennsylvania.  Defendant Mega Construction Corporation of New Jersey, Inc. ("Mega") is a building company that was subcontracted by a non-party to this case to provide framing and carpentry work for an apartment complex project in Conshohocken, Pennsylvania.  Defendants Joseph R. Pallonetti, Susan L. Kaczmarek, and Eugene G. Kaczmarek are Mega's shareholders.  Sometime in the summer of 2007, in relation to the separate bond agreement with the non-party contractor, Merion Construction Management, LLC ("Merion"), Developers and Mega entered into the indemnity agreement (the "Agreement"), by which Developers would issue performance bonds on behalf of Mega and Mega would indemnify Developers for certain costs, damages or losses, all in relation to Mega's work on the apartment project.

In May 2011, long after work began on the project, Developers and Mega received a letter from Merion notifying the two that Mega "fail[ed] to perform its work . . . in accordance with the plans, specifications and the Subcontract documents" and that "specific deficiencies" were set forth in prior letters dated in March 2011.  See Ex. 1, Plf. Supp. Chronology of All Material Facts (ECF 63).  The letter further states that despite meetings between Merion, Mega and Developers leading up to May 2011, Mega refused to correct the defective work and Merion "declares that Mega is in default under the Subcontract."  Id.  A following letter from Merion to the two parties, dated May 13, 2011, formally "terminated" the subcontract between Merion and Mega.  Id.  The parties remain in dispute as to whether Mega's work on the project was defective and, more importantly, as to whether Merion's letter constituted a default.

In January 2012, the acquirer of the apartment project sued Developers and Mega for breach of contract in Pennsylvania state court in Montgomery County.  See Washington Street Assocs. V Acquisition Corp., et al. v. Mega Const. Corp., et al., No. 2012-0048 (Pa. Ct. Comm.

Pl.). Relating to the state court case, Mega also eventually sued several of its insurers (not Developers) in New Jersey federal court to contest certain denials of coverage.

As a consequence of the Pennsylvania state court action, Developers has incurred financial losses due to attorney fees, costs, and other expenses of which it has attached to its Motion numerous pages as proof. Developers claims that pursuant to the surety contract, Mega must indemnify Developers for these costs, as well as the costs related to the current litigation between them.

### III. PROCEDURAL BACKGROUND

On August 19, 2015, Developers filed its Complaint with the Court. The case was placed on the suspense docket in May 2016 pursuant to a Court Order, which stated that the case would be suspended until the conclusion of the related litigation in the District of New Jersey. Following an October 2018 status report informing the Court that the New Jersey litigation had terminated (it seems that summary judgment was granted against Mega, affirmed by the Third Circuit on appeal), the case was transferred back to the active docket.[2] However, in November 2018 the case was again suspended, this time due to the pending Pennsylvania state court litigation that the Court felt "without dispute . . . will prevent continuation of this case in this Court as this time." See 11/2/18 Order (ECF 28).

Then, following a February 2022 letter from counsel indicating that the state court case "was on the verge of resolution," the case was placed back on the active docket and a trial pool date was set for December 2022. This deadline was soon delayed as the parties began settlement discussions with Magistrate Judge Strawbridge.

---

[2] See Mega Const. Corp. v. XL Am. Group, No. 13-0233, 2016 WL 9086968 (D.N.J. Apr. 28, 2016) (Sheridan, J.), aff'd, 684 Fed. Appx. 196 (3d Cir. 2017). Summary judgment was granted because Mega proceeded on their claims against the insurance carriers on the theory that pure economic loss due to breach of contract is an insured risk, which the court held is not recognized under Pennsylvania law.

3

On October 17, 2022, Developers filed its motion for summary judgment. Plf. Mot. (ECF 48). Mega filed its own motion for summary judgment on November 14, 2022, seeking to dismiss all of Developers' claims. Def. Mot. (ECF 52). The parties have filed Responses, Replies, and supplemental pretrial memoranda and chronologies. On December 22, 2022, the Pennsylvania state court action was terminated by non-pros. See 12/23/22 Letter (ECF 56). The Court heard oral argument from the parties on March 15, 2023.

## IV. JURISDICTION

This Court has subject-matter jurisdiction to hear this case under 28 U.S.C. § 1332 (diversity jurisdiction) because the parties are in complete diversity—the Plaintiff has its principal place of business in California and the Defendants all reside in New Jersey—and the alleged amount in controversy exceeds $75,000. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in the Easter District of Pennsylvania, namely the construction work Mega performed on the apartment project.

## V. LEGAL STANDARD

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Under Federal Rule of Civil Procedure 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Id. at 255. "This standard does not change when the issue is presented in the context of cross-motions for summary judgment." Appelmans v. City of Philadelphia, 826 F.2d 214, 216 (3d Cir.

1987). When both parties move for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 402 (3d Cir. 2016) (citing 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016).

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule, [ ] set forth specific facts showing a genuine issue for trial." Stell v. PMC Techs., Inc., No. 04-5739, 2006 WL 2540776, at *1 (E.D. Pa. Aug. 29, 2006) (Baylson, J.) (citing Fed. R. Civ. P. 56(e)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (The nonmoving party "must do more than simply show that there is some metaphysical dispute as so the material facts."). Summary judgment is appropriate if the adverse party fails to rebut by making a factual showing "sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## VI.     DISCUSSION

Pending before the Court are the parties' cross-motions for summary judgment. Developers' claims include indemnification, common law indemnification, specific performance, exoneration, and common law exoneration. See Compl. (ECF 1). Despite the variety, all of

Developers' claims revolve around the same set of facts regarding the Agreement, Mega's work on the project for Merion, and the subsequent litigation.[3]

### a. **Plaintiff's Motion for Summary Judgment**

Developers argues that it is plainly clear it is owed by Mega for its legal fees incurred from its need to defend itself in the litigation which sprouted from the project work on which it claims the bond agreement was based. Developers claims that a default occurred, notice was given, and that under the indemnity agreement Mega was obligated to reimburse Developers for its resulting legal expenses. Specifically, Developers points to a provision in the parties' indemnity agreement that states:

1. Indemnification

In consideration of the execution and delivery by Surety of a Bond or any Bonds on behalf of Principal, Principal and Indemnitor shall pay all premiums charged by Surety in connection with any Bond (including extensions, renewals or modifications) issued by Surety on behalf of Principal and **shall indemnify and hold harmless Surety** from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind of nature, together with interest thereon at the maximum rate allowed by law, which Surety may sustain or incur by reason of or in consequence of the execution and delivery by Surety of any Bond on behalf of Principal, whether or not Surety shall have paid any amount on account thereof, including. . . .

Liability incurred or amounts paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or **judgments relating to Principal's nonperformance of an Obligation** or any other matter covered by a Bond;

Liability incurred or expenses paid **in connection with claims, suits or judgments relating to an Obligation or a Bond, including, without limitation, attorneys' fees and all legal expenses**, and all fees and costs for investigation, accounting, or engineering services related to the adjustment of claims and losses;

Liability incurred or expenses paid **in recovering or attempting to recover losses or expenses paid or incurred in connection with this Agreement**, an Obligation or a Bond.

See §§ 1.1-1.6, Ex. A, Plf. Mot., ("Agreement") (ECF 48-2) (emphasis added).

---

[3] The parties are in agreement that Pennsylvania law applies.

Thus, this case revolves around this indemnification provision of the Agreement, and whether Developers' legal expenses were relating to Mega's nonperformance of an obligation or were paid in connection with a lawsuit relating to an obligation or bond.[4]

Developers attached to its motion the Agreement, as well as the Performance Bond, executed for $4,200,000, between Developers and Mega.  Ex. C, Plf. Mot. (ECF 48-4). Developers also attached to its motion 80 pages of legal fees it claims it incurred due to the Pennsylvania state court action and which it incurred as a result of prosecuting this action.  See Ex. D, Plf. Mot. (ECF 48-5).  Also attached is an attorney affidavit quoting the total cost of litigation, from April 2011 to April 29, 2022, as being $93,165.  See Ex. E, Plf. Mot. (ECF 48-6). Finally, Developers also attached admissions from Mega in response to Developers' interrogatories.  Ex. B, Plf. Mot. (ECF 48-3).

### b. Defendants' Motion for Summary Judgment

Defendants state that it is undisputed that Developers is only seeking reimbursement for legal fees expended over an 11-year period related to the Pennsylvania state court lawsuit brought against Developers and Mega based on the alleged failure of Mega to adequately perform carpentry work for the apartment complex.  Importantly, Defendants claim that over that period, "not one penny" of Developers' has been used to "defend Mega."  Defendants argued during oral argument that Developers' decisions regarding their litigation defense constituted "business decisions" of which Developers had wide latitude.

---

[4] "Obligation" is defined in the Agreement as: "Any agreement executed, undertaking made, statutory or other duty assumed or liability incurred by Principal, the performance or discharge of which is guaranteed by Surety pursuant to a Bond."  See Agreement at 4.  "Bond" is defined as: "Any contract of suretyship, and any authorized extensions, renewals, modifications or substitutions thereof, undertaken by Surety for Principal, whether before or after the date of this Agreement (excluding, however, any bond(s) which is/are specifically within the scope of another indemnity agreement."

Defendants emphasize that Defendants paid for their own defense entirely, or else secured their own insurance coverage for defending Mega in the underlying state litigation. Mega's president, Defendant Joseph Pallonetti, stated in an attached affidavit that Mega had incurred over $250,000 in legal fees defending the state court breach of contract lawsuit, and that Mega had offered to place $50,000 in escrow for the benefit of Developers in September 2014. See Ex. 2 and Ex. 3, Def. Mot. (ECF 52-2, 52-3).

Defendants do not deny entering into an indemnity agreement with Developers, they merely deny breaching it. Defendants stand by their performance under the bond contract and dispute that Mega was ever in default, despite the letter from Merion. Defendants contended at oral argument that Merion's letter was part of a negotiation process with the acquiring company to lower the purchase price, although Defendants do not reference anything in the record to support this fact. Defendants also contend that because the apartment was in use by tenants by the time Merion sent the default letter in May 2011, its performance had been "completed" under the bond contract—although again, without citing specifically to the record.

    c. **Analysis and Law**

In large part due to a sparse record on both sides, the Court is not prepared to take the important step in granting either party's motion because genuine disputes of material fact still exist. See FLS Holdings, Inc. v. Liberty Mut. Fire Ins. Co., No. 13-2511, 2015 WL 263827 (E.D. Pa. Jan 21, 2015) (Restrepo, J.) (denying summary judgment for certain claims in large part based on the "relatively sparse record presented for consideration"); Driscoll Machinery, Inc. v. Reynolds & Reynolds, No. 91-2766, 1992 WL 102718 (E.D. Pa. May 8, 1992) (Pollak, J.) (denying summary judgment in part due to the "relatively sparse record before the court"). There are still disputes of fact as to whether Mega was in default and whether the legal expenses

8

incurred by Developers should be indemnified by Mega.  In particular, the Court focuses on Section 5 of the Agreement, titled "Default," which provides the conditions under which default occurs under the Agreement.  See § 5.1, Ex. 1, Compl. at 6.  It remains a question of fact as to whether the conditions upon which a default occurs under the Agreement are present.  See J-Man, Inc. v. Nikkiso Pumps Am., Inc., No. 06-5065, 2007 WL 9809334, at *5 (E.D. Pa. May 9, 2007) (whether party was in default under contract was "a question of fact").

Developers does not offer any other proof that Mega was in default except for the Merion letters, which it filed with its Supplemental Chronology.  Rule 56 requires much more than that.  And while Developers continues to argue that it is the Court's responsibility to construe the indemnity contract, and it is right, it is not the Court's responsibility to decide, on a modicum of evidence from a sparse record, whether the conditions precedent that are necessary to give rise to such a claim actually occurred.  The affidavits produced by Developers are not sufficient for the Court to conclude that no reasonable juror could find against Developers' contentions.  The admissions by Mega in response to Developers' interrogatories do not offer much more clarity on these disputes of fact, as interrogatory answers seldom do.

The same goes for Mega's motion.  Mega has submitted even less evidence (no deposition testimony was submitted from either side) in support of its motion.  An affidavit from Mega's president, Mr. Pallonetti, provides a useful timeline for the Court but offers nothing more than a summary of the parties' settlement efforts with the plaintiff from the state court litigation.  While the Court is aware that both sides must be able to make references to the record to rebut the opposition's arguments, the Court is not prepared to grant either motion on the current record.

Neither side cites to binding precedent that would dispose of this case at this stage. Developers often makes mention of Fallon Electric Company, Inc. v. Cincinnati Insurance Company, a Third Circuit case involving the interpretation of an indemnity contract that went to trial and was appealed by the winner seeking an award of attorney's fees. In Fallon, two subcontractors sued their contractor and an insurance company that issued a performance bond based on a failure to pay. See Fallon Elec. Co., Inc. v. Cincinnati Ins. Co., 121 F.3d 125, 126 (3d Cir. 1997). After a trial resulting in a win for the insurance company, the court declined to award the insurance company its full attorney's fees as part of its indemnification agreement with the subcontractors because it felt they were not "incurred out of reasonable necessity." Id. at 127. The Third Circuit reversed, holding that the district court was wrong to impose a reasonableness requirement on a surety's ability to recover fees and expenses under an indemnity agreement. Id. at 128. This case, while possibly material to an argument over the amount of damages owed to Developers, has no bearing on the direct issue of liability in this case, and Developers' constant reliance on its holding is mistaken at this stage.[5]

## VII. CONCLUSION

For the above reasons, the Court will dismiss the motions.

An accompanying order follows.

---

[5] Mega relies mostly on a district court case not from this jurisdiction which only indirectly comments on the issue of whether a surety is owed fees under an indemnity contract. See U.S. Fidelity & Guar. Co. v. Feibus, 15 F.Supp.2d 579 (E.D. Pa. 1998).